# Richmond.

## F. C. PITCHFORD V. COMMONWEALTH.

### January 18, 1923.

1. NEW TRIALS—*Jury—Cause of Challenge to Juror—Injustice to Accused.*—As a general rule, a new trial will not be granted in a criminal case for matter which is a principal cause of challenge to a juror, which existed before he was elected and sworn as such juror, although it was unknown to the accused till after verdict, and could not have been discovered before the jury were sworn by the exercise of reasonable diligence, unless it appear that the accused suffered injustice from the fact that such juror served upon the case.

2. NEW TRIALS—*Jury—Language and Conduct of Jurors—Trial Court to Determine Whether Accused was Injured.*—At least where the testimony is oral, and is heard *ore tenus* by the trial judge, where there is a conflict of testimony as to the language and conduct of jurors on which an exception to the jury is founded, it properly belongs exclusively to the judge who presided at the trial to weigh and decide upon the credibility of opposing statements of the witnesses and jurors, and to determine whether, in justice to the accused, and upon all the circumstances of the case, a new trial ought to be awarded.

3. NEW TRIALS—*Jury—Prejudgment by Juror—Case at Bar.*—In the instant case it appeared that, prior to the trial, a juror had used language which he did not claim that he had forgotten at the time he was chosen as a juror, which showed unequivocally that he had prejudged in his own mind, and had a fixed opinion on the pivotal question of fact in the case adverse to the accused, without regard to the evidence which might be introduced on the trial, *i. e.*, that he had a fixed opinion that the accused did not shoot in self-defense, and that he ought to be punished. The juror's admission that he had so expressed himself nullified his general statement that he had not formed any opinion before the trial.

   *Held:* That the accused suffered injustice from the fact that the juror served upon the case, and that as the evidence was not conflicting upon the fact so as to make the decision of its existence one to be exclusively determined by the trial judge, the Supreme Court of Appeals must consider it as an established fact in the case.

4. NEW TRIALS—*Jury—Bias of Juror—Injustice Suffered by Accused from the Fact that the Juror Served.*—The phrase that "Unless it appears that the prisoner suffered injustice from the fact that such juror served upon the case," cannot mean that in order to ascertain whether accused has suffered injustice, the court is to look into the evidence against the prisoner on the issue tried in the case. The plain meaning of the language is, that the trial court upon a motion for a new trial on such ground will look into the affidavits or other evidence offered to sustain the motion, and from them determine whether the juror, who had before the trial expressed his opinion as to the guilt of the accused, had merely expressed such opinion from a partial knowledge of the case, and whose mind was unbiased so that he could impartially try the accused upon the charge, or whether he had prejudged the case and was determined to find him guilty without regard to evidence; and if from such affidavits or other evidence it appeared, on the motion for a new trial, that a juror had prejudged the case and had not merely expressed an opinion, which might be changed by evidence, it would be assumed that the prisoner was injured.

5. NEW TRIALS—*Jury—Bias of Juror—Injustice Suffered by Accused from the Fact that the Juror Served—Mere Opinion or Prejudgment.*—If it appeared from the affidavits and other evidence, to the satisfaction of the court, that the expressions of opinion were such that the juror might readily have forgotten, then the court would regard it as a mere opinion, and not a prejudgment, and that, when the juror on his *voir dire* declared that he had expressed no opinion as to the guilt or innocence of the accused, he did not swear falsely, but had forgotten that he had expressed such opinion; but if, on the other hand, it appeared that decided opinions had been expressed by him as to the guilt of the accused so recently and so decidedly as to convince the court that, for the purpose of being a member of the jury, he denied on oath that he had expressed any opinion as to the guilt of the accused, then it is clear that he had prejudged the case; and of course the prisoner was injured by his being on the jury.

6. NEW TRIALS—*Jury—Refreshment Furnished Jury—Case at Bar.*—In the instant case it appeared that refreshment was furnished a portion of the jury at the expense of a first cousin of the widow of the deceased, and one hostile to the accused and actively participating in his prosecution.

*Held:* That this was ground for a new trial.

7. NEW TRIALS—*Jury—Entertainment Furnished Juror.*—The acceptance by a juror of an invitation of a person hostile to the accused to spend the night with him, although its consummation was thwarted by the order of the trial judge, amounted in its influence, for all practical purposes, to the same thing as if the entertainment of the juror had actually occurred, and is ground for a new trial.

8. NEW TRIALS—*Jury—Entertaining Jurors.*—Whether the person doing the entertaining is a party to the cause or not a party, whether his interest is or is not pecuniary, is wholly immaterial. If he has, from any motive whatsoever, the desire that the verdict should be as it is returned, and he has entertained the jury, or any member of it, for reasons of public policy the verdict is invalidated, and this principle is applicable to both criminal and civil cases.

9. NEW TRIALS—*Misconduct of Jury—Communications Between a Juror and a Witness or Third Person.*—Private communications possibly prejudicial between jurors and third persons or witnesses are absolutely forbidden, and invalidate the verdict, unless their harmlessness is made to appear.

10. HOMICIDE—*Res Gestae—Declaration of Deceased.*—A declaration of the deceased which accompanied his assault upon the accused, made just as the deceased took and while he still had hold of the accused, was part of the *res gestae*, and properly admissible.

11. INSTRUCTIONS—*Abstract Instructions.*—An instruction so abstract in much of its phraseology as to be more likely to mislead than to be helpful to the jury should not be given.

12. HOMICIDE—*Self-Defense—Instructions—Form of the Instruction—Danger as it Appeared to Accused.*—Where the evidence warranted it, the following instruction on self-defense would be proper: "If the jury should believe from the evidence that the accused shot the deceased under a reasonable belief that his own life was in danger, or that he was in danger of serious bodily harm, as the facts and circumstances reasonably appeared to him at the time, he was excusable in so doing, though such danger was unreal. The question for the jury in this case is not whether the taking of the life of the deceased might have been safely avoided, but whether the accused, in the circumstances of agitation and peril in which he was placed, as reasonably appeared to him (if the jury believe that he was in such circumstances), might reasonably have believed and did believe it necessary to shoot as he did, resulting in the death of the assailant, in order to save his own life or avoid serious bodily harm."

Error to a judgment of the Circuit Court of Brunswick county.

*Reversed and remanded for a new trial.*

At the April term, 1920, of the court below, the accused, F. C. Pitchford, was indicted for the murder of one Alex. P. Roberts, on March 16, 1920. There was a

trial of the case at the September, 1920, term of the court, which resulted in a verdict finding the accused guilty of voluntary manslaughter and fixing his punishment at five years confinement in the penitentiary. This verdict was set aside by the trial court; on what ground does not appear from the record before us. A second trial was had at the April, 1921, term of court, which resulted in a like verdict, namely, finding the accused guilty of voluntary manslaughter and fixing his punishment at five years confinement in the penitentiary. The trial court refused to set aside the latter verdict and entered judgment accordingly, and the accused brings error.

What is said below will have reference to the second trial.

Among the assignments of error are the following:

That the court erred in refusing to set aside the verdict and award the accused a new trial on the following grounds, namely:

1. That one of the jurors, J. W. Nanny, who was foreman of the jury, had, before the trial, formed and expressed a fixed opinion that the accused was guilty of a crime in shooting the deceased and should be punished.

2. That at the view, which was had during the trial, refreshment was furnished a portion of the jury, including said juror Nanny, at the expense of E. R. Abernathy, a first cousin of the widow of the deceased— Abernathy being hostile to the accused, desiring his conviction, and taking an active part in the prosecution, sitting with and being consulted by the prosecuting attorneys when the jury was being chosen, and otherwise taking an active part against the accused. And that W. S. Abernathy, the father of E. R. Abernathy, also hostile to the accused, during the view was observed in conversation with the juror Nanny and was seen to pat Nanny on the shoulder and was heard to speak of the

42

friendship that existed between them; and that either then, or some time during the view, W. S. Abernathy invited Nanny to spend the night with him, agreeing to take Nanny to court next morning, which invitation Nanny accepted, but was prevented from so spending the night by order of the trial judge.

3. That during the trial, in a recess of the court, after the jury had been impaneled and the testimony had been partially introduced and before the verdict was returned, one member of the jury was seen in private conversation with Mack Fackler, a witness for the Commonwealth and hostile to the accused; the subject of the conversation not being heard by the person who observed it.

The facts bearing upon the aforesaid issues as shown by the record before us are as follows:

The case before the jury turned upon the question whether the accused shot the deceased in self-defense as the deceased, when within striking distance, was, as it reasonably appeared to the accused, about to again advance and renew the assault upon the latter, in accordance with the testimony of and for the accused; or whether the shot was fired after the deceased had ended his assault upon the accused, and was going away from him and had gone some ten or twelve feet away, in accordance with the testimony of witnesses for the Commonwealth.

The juror, Nanny, when examined on his *voir dire* stated that he had no prejudice for or against the accused; that he had not formed or expressed any opinion as to his guilt or innocence; and that he could give him a fair and impartial trial.

After the verdict the following facts were discovered by the accused or his counsel, which the affidavits of the accused state could not, by the exercise of reasonable

diligence, have been sooner discovered, and upon the truth of this affidavit in this particular no issue was taken on the part of the Commonwealth and no controversy appears in the record.

Two days before the trial the juror, Nanny, said to the witness, Rogers, in substance, that the accused was guilty of a crime in shooting the deceased and that "he thought Pitchford (the accused) ought to be punished;" that "if he had shot while they were fighting he would be justified." Nanny testified before the trial judge on the hearing of the motion to set aside the verdict. In this testimony he said that he had not formed any opinion before the trial; that his decision was based upon the evidence in the case; and that his statements when examined upon his *voir dire* were true; but he admitted that he had said before the trial that "if Mr. Pitchford had done anything he ought to be punished." He also admitted that he had told Rogers, two days before the trial, "that Pitchford ought to be punished;" and he did not deny that he made the further statement to Rogers above quoted; nor did he testify that he had at any time forgotten that he had made such statements.

There is nothing in the testimony of Nanny to the effect that his aforesaid opinion as to the guilt of the accused and that he should be punished was at all hypothetical. There is in his testimony and that of Rogers some reference to Nanny having expressed in the same conversation with Rogers an additional opinion that the accused was a "bad man," and that this was to some extent a hypothetical opinion, dependent upon whether all the reports concerning the accused were true; but that, as appears from both Rogers' and Nanny's testimony, was a subject entirely apart from the opinion of Nanny that the accused was guilty of a crime in killing the deceased and that he should be punished.

Further: The testimony was uncontroverted to the effect that the jury went to the view in two automobiles. That the portion of the jury including the juror, Nanny, in one of the automobiles, arrived at the place of the view ahead of the trial judge and the residue of the jury, and on their arrival stopped at the store of E. R. Abernathy & Brother, and were treated to cool drinks at the expense of that firm. And the other facts set out above in paragraph numbered "2" also appeared from the uncontroverted evidence.

The testimony on the hearing upon the motion for setting aside the verdict was also uncontroverted to the effect that, in a recess of the court, during the trial, after the jury had been empaneled and the testimony had been partly introduced and before the verdict was returned, one member of the jury was seen in conversation with Mack Fackler, a witness for the Commonwealth and hostile to the accused—the subject of the conversation not being heard by the person who observed it. Fackler was not examined, nor was any of the jurors, to show the subject of the conversation with Fackler.

*E. P. Buford* and *John L. Lee,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

In the view we take of the case the chief question presented by the assignments of error for our determination is the following:

1. Can we say that it appears from the record before us that the accused was not tried by an impartial jury?·
The question must be answered in the affirmative.

[1-3] (a). It is true that it has been repeatedly held. by this court, in general terms, that a new trial will not be granted in a criminal case for matter which is a principal cause of challenge to a juror, which existed before he was elected and sworn as such juror, although it was unknown to the accused till after the verdict and could not· have been discovered before the jury were sworn by the exercise of reasonable diligence, unless it appear that the accused suffered injustice from the fact that such juror served upon the case. *Smith's Case,* 2 Va. Cas. (4 Va.) 6; *Poore's Case,* 2 Va. Cas. (4 Va.) 474; *Kennedy's Case,* 2 Va. Cas. (4 Va.) 510; *Brown's Case,* 2 Va. Cas. (4 Va.) 516; *Hughes' Case,* 5 Rand. (26 Va.) 655; *Jones' Case,* 1 Leigh (28 Va.) 598; *Heath's Case,* 1 Rob. (40 Va.) 735; *Hailstock's Case,* 2 Gratt. (43 Va.) 564; *Curran's Case,* 7 Gratt. (48 Va.) 619; *Thompson's Case,* 8 Gratt. (49 Va.) 637; *Bristow's Case,* 15 Gratt. (56 Va.) 634; *Gray's Case,* 92 Va. 772, 22 S. E. 858.

It is true also that it has been held by this court (at· least where the testimony is oral and is heard *ore tenus* by the trial judge), that, where there is a conflict of testimony as to the language and conduct of jurors on which the exception to the jury is founded, it properly belongs exclusively to the judge who presided at the trial to weigh and decide upon the credibility of the opposing statements of the witnesses and jurors and to determine whether, in justice to the accused, and upon all the circumstances of the case a new trial ought or ought· not to be awarded. *Heath's Case, supra* 1 Rob. (40 Va.) 735, 742; *Dilworth's Case,* 12 Gratt. (53 Va.) 689, 698-700, 65 Am. Dec. 264.

But in the instant case it appears from the testimony·

of Rogers and of Nanny himself, in substance and without conflict in this particular between their testimony, that, prior to the trial and only two days before it, Nanny had used language which he did not claim that he had forgotten at the time he was chosen as a juror, which showed unequivocally that he had prejudged in his own mind and had a fixed opinion on the pivotal question of fact in the case adverse to the accused, without regard to the evidence which might be introduced on the trial, namely, that he had prior to the trial a fixed opinion that the accused did not shoot in self-defense, but after the assault upon him had ended, and that he ought to be punished. By his own admission, in substance, that he had expressed himself to the effect just stated, without claiming that he had at any time forgotten that he had so expressed himself, Nanny nullified his general statement that he had not formed any opinion before the trial. The two statements are so diametrically opposed that they cannot stand together. And his statement that his decision was based on the evidence in the case amounts to nothing as tending to show that he was unbiased; since, having a fixed opinion when he went upon the jury that the shooting was not in self-defence, he naturally believed the witnesses for the Commonwealth who testified to that effect and disbelieved the accused and his witnesses who testified to the contrary, and, hence, could readily say, as he did, that his decision was based on the evidence.

As the case is one in which the fact that the juror did not stand indifferent when he entered upon the discharge of his duty and served as juror, but was biased against the accused to the extent of the fixed opinion in the material particulars aforesaid; and as this fact is not involved in any conflict of testimony such as to make the decision of its existence one to be exclusively

determined by the trial judge, we must consider it as an established fact in the case.

That being true, we are of opinion that it appears from the record before us that the accused suffered injustice from the fact that such juror served upon the case. *State* v. *Greer*, 22 W. Va. 800, 824.

[4, 5] In *State* v. *Greer* all of the Virginia cases are cited which we have cited above, except the last and third from the last cited by us, and the holding of such cases in general terms above mentioned is referred to. The opinion of the West Virginia court also cites *McDonald's Case*, 9 W. Va. 456; and thereupon proceeds as follows:

"What is meant by the following language used by the courts in Virginia and in this State: 'Unless it appears that the prisoner suffered injustice from the fact that such juror served upon the case?' It certainly cannot mean that, in order to ascertain whether the prisoner has suffered injustice, the court is to look into the evidence against the prisoner on the issue tried in the case, because it would be impossible to ascertain, in that way, whether he had suffered injustice. The plain meaning of the language is, that the trial court, upon a motion for a new trial on such ground, will look into the affidavits or other evidence offered to sustain the motion, and from them determine whether the juror, who had before the trial expressed his opinion as to the guilt of the accused, had merely expressed such opinion from a partial knowledge of the case, and whose mind was unbiased so that he could impartially try the accused upon the charge, or whether he had prejudiced the case and was determined to find him guilty without regard to evidence; and if from such affidavits or other evidence it appeared on the motion for a new trial that a juror had prejudged the case and had not merely expressed

an opinion which might be changed by evidence, it would be assumed that the prisoner was injured, and it would be the duty of the court to set aside the verdict and grant a new trial in the case. And if a motion in such case was overruled, the appellate court would, on writ of error for that cause, reverse the judgment and set aside the verdict and grant a new trial. If it appeared from the affidavits and other evidence, to the satisfaction of the court, that the expressions of opinion were such that the juror might readily have forgotten, then the court would regard it as a mere opinion and not a prejudgment and that, when the juror on his *voir dire* declared he had expressed no opinion as to the guilt or innocence of the accused, he did not swear falsely, but had forgotten that he had expressed such opinion; but if, on the other hand, it appeared that decided opinions had been expressed by him as to the guilt of the accused so recently and so decidedly as to convince the court that, for the purpose of being a member of the jury, he denied on oath that he had expressed any opinion as to the guilt of the accused, then it is clear that he had prejudged the case; and of course the prisoner was injured by his being on the jury."

We think that the holding just quoted is sound and that the service of the juror, Nanny, upon the jury in the instant case falls within the condemnation thereof. Moreover:

[6, 7] (b). In view of the fact that refreshment was furnished a portion of the jury at the expense of E. S. Abernathy, a first cousin of the widow of the deceased and hostile to the accused, and actively participating in his prosecution, the verdict cannot stand. Also the acceptance by the juror, Nanny, of the invitation from W. S. Abernathy, a person hostile to the accused (although its consummation was thwarted by the order of the trial

judge on motion of counsel for the accused), amounted in its influence, for all practical purposes, to the same thing as if the entertainment of Nanny by W. S. Abernathy had actually occurred.

As said in *New River, etc., R. Co.* v. *Honaker*, 119 Va. 641, at p. 654, 89 S. E. 960, at p. 964 (Ann. Cas. 1917C, 132): "The almost uniform holding of the decisions of all the States and in England is that a verdict rendered by a jury any of whose members has been *treated by one having an interest in the case*, his agent or attorney, must be set aside, and in nearly all cases the rule is applied without regard to its actual influence on the verdict. The reason for the rule being one of public policy, requiring juries to be kept out of such a position that their verdict may be the subject of suspicion of being influenced by any party to the litigation, whether such influence was in fact sought to be exerted or not, or in fact existed."

See authorities cited 119 Va. at p. 654, 89 S. E. at p. 964 (Ann. Cas. 1917C, 132); also 12 Am. & Eng. Enc. of Law (1st ed.) p. 372 and note 3; 21 Viner's Abridgements, p. 448; *Ensign* v. *Harney*, 15 Neb. 330, 18 N. W. 73, 48 Am. Rep. 344; *Rainey* v. *States*, 100 Ga. 82, 27 S. E. 709; *Mann* v. *State*, 47 Tex. Cr. R. 250, 83 S. W. 195; *Va. Western Power Co.* v. *Kessinger*, 122 Va. 135, 94 S. E. 186.

In the head note to *Rainy* v. *State*, prepared by the chief justice of the Georgia court, this is said: "Where, during the trial of a criminal case, the jury dispersed and one of them was entertained at dinner free of charge by an attorney for the State, such conduct on the part of the latter is cause for a new trial, although the counsel for the accused knew of the same before the verdict had been returned. In such case the trial court should not, nd this court will not, inquire whether injury resulted

to the accused or not, but the verdict, upon principles of sound public policy, will be set aside, to the end that the purity of jury trial may be preserved unimpaired."

[8] In *Mann* v. *State* (a misdemeanor case), as per head note, this is held: "Where it was shown that the prosecutor accompanied one of the jurors home and took dinner with him   *   *   *   the judgment of conviction will be reversed."

This same principle, which is applied in civil cases upon the subject under consideration and in criminal cases, where the prosecuting attorney or the prosecutor does the entertaining, is applicable in criminal cases where the person doing the entertaining is hostile to the accused for any reason. · Whether the person doing the entertaining is a party to the cause or not a party; whether his interest is or is not pecuniary, is wholly immaterial. If he has, from any motive whatsoever, the desire that the verdict should be as it is returned and he has entertained the jury, or any member of it, for reasons of public policy, the verdict is invalidated. As said in some of the authorities, it is of more importance that the community should feel assured of the purity of the trial by jury than that a particular person should be convicted, even if guilty.

In *Thompson's Case*, 8 Gratt. (49 Va.) 637, it is held that the casual entertainment of the jury by a medical witness for the Commonwealth by treating them to drinks, when he was accidentally present with them at the bar of the hotel where they were brought in the custody of the officers, was not sufficient ground to set aside the verdict. But on this subject the court, at page 660 of 8 Gratt. (49 Va.), said this: "The only remaining question is whether the well intended but thoughtless and ill timed act of civility and hospitality on the part of the Commonwealth's witness, Dr. War-

ing, in treating the jury   *   ·*   (in the presence of the officers who had them in charge, be it remembered) shall vitiate this verdict.    That the act was mere inadvertence, and the intent innocent, cannot be questioned, from aught that appears in this record to the contrary.    His being there was purely accidental, as appears from the deposition of the deputy sheriff. He went upon his invitation.    He had no interest in the cause, and no connection with it, except as a professional witness for the Commonwealth.    *It does. not appear that he was hostile to the prisoner*, or even knew him, *or desired his conviction;* it does not appear that there was the least question as to his credibility; but the contrary is fairly inferable from the record.    That it was an irregularity is not denied, in the witness, the jurors and the officers permitting it; but one which, though brought to the attention of the court who presided over the trial, so far as appears from the record, passed without its animadversion, doubtless because of the absence of intention on the part of all concerned to commit any breach of duty or propriety.    *It cannot reasonably be presumed or suspected* that any injury to the prisoner resulted from the *inadvertence.*"    (Italics supplied.)

And further:

[9] (c). As a private communication between a witness for the Commonwealth with a member of the jury during the trial of the case was established by the evidence introduced upon the motion for a new trial, without conflict in such evidence, and the harmlessness of such communication is not made or even sought to be made to appear by any evidence in the record, the verdict can not stand.    Beale's Cr. Pl. & Pr., sec. 231; *Mattox* v. *United States,* 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917.

In Beale's Cr. Pl. & Pr., *supra* (sec. 251), this is said:

"Private communications possibly prejudicial between jurors and third persons or witnesses   *   *   *   are absolutely forbidden, and invalidate the verdict, unless their harmlessness is made to appear." This is the precise language of the opinion of the Supreme Court in the case of *Mattox* v. *United States, supra* (146 U. S. 140, at page 150, 13 Sup. Ct. 50, at page 53, 36 L. Ed. 917, at page 921).

No question of waiver by the accused, prior to the verdict,. of objection to the jury on any of the grounds above mentioned is presented in the case. Therefore, for the reason above stated, we feel constrained to reverse the case and grant a new trial.

The conclusion just stated renders it unnecessary for us to pass upon any other of the assignments of error, except those which involve questions which are likely to arise upon a new trial. There are such assignments, which concern the action of the trial court in refusing to strike from the evidence "the testimony of all witnesses for the Commonwealth to the effect that the deceased, before striking the prisoner, said the accused had struck Tommie Roberts, and all testimony of the defendant's witnesses in which that statement was made," as set forth in bill of exceptions No. 5; and that the court erred in giving and in refusing to give certain instructions as set forth in the bills of exceptions relating thereto.   ·

[10] 2. On the subject of the evidence mentioned, we deem it sufficient to say that this evidence merely disclosed a declaration of the deceased which accompanied his assault upon the accused. It was made just as the deceased took and while he still had hold of the accused. It was a part of the *res gestae* and hence could not be properly excluded from the evidence.

[11, 12] 3. On the subject of the action of the court

in giving and refusing instructions, we will say that we find no error in the action of the court, unless it consisted in giving instruction No. 4, on motion of the Commonwealth, and instruction "E," which was given on motion of the accused on the first trial, but was offered with the request that it be amended in a material particular on the second trial. Neither of these instructions involves any novel question, hence we do not set them out here. We deem it sufficient to say that, if the evidence upon a new trial should be substantially the same and the instructions given on the aforesaid second trial are all again offered, they will be proper instructions to be given, with the exception of said instructions No. 4 and "E." Instruction No. 4 should, in such case, not be given, as it is so abstract in much of its phraseology as to be more likely to mislead than to be helpful to the jury; it covers the same ground that instruction 5 covers in a more concrete way; save the statement of the punishment prescribed by law for involuntary manslaughter, and that subject would be better covered by the charge of the clerk or by a separate instruction. Instruction "E" should, in such case, be modified and given in the following form:

"E. If the jury should believe from the evidence that the accused shot the deceased under a reasonable belief that his own life was in danger, or that he was in danger of serious bodily harm, as the facts and circumstances reasonably appeared to him at the time, he was excusable in so doing, though such danger was unreal. The question for the jury in this case is not whether the taking of the life of the deceased might have been safely avoided, but whether the accused, in the circumstances of agitation and peril in which he was placed, as reasonably appeared to him (if the jury believe that he was in such circumstances), might reasonably have believed

and did believe it necessary to shoot as he did, resulting in the death of the assailant, in order to save his own life or avoid serious bodily harm."

If instruction "E" is given in the form just stated, that will take the place of instruction "F," which was given on the second trial, and in such case instruction "F" should not be given, as it would tend to over-emphasize the subject dealt with by instruction "E."

*Reversed and remanded for a new trial.*