# �долфRichmondRichmond Richmond

## RANDOLPH C. COX v. THE COMMONWEALTH.

January 28, 1932.

Present, All the Justices.

The opinion states the case.

*Charles W. Moss* and *H. M. Smith, Jr.*, for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

Upon an indictment for murder, the accused was tried, convicted and sentenced to be electrocuted.

Neither the evidence nor the instructions were made a part of the record. The only error assigned is in the refusal of the trial court to set aside the verdict on the ground that J. E. Davis, one of the twelve jurors, was not impartial, some time prior to the trial having expressed an opinion very hostile to the accused.

J. N. Wood, a prohibition officer, was killed by Randolph C. Cox on December 19, 1930. The trial was completed on January 30, 1931, and on the same day the judge over-ruled a motion to set aside the verdict based upon exceptions taken to the ruling of the court made during the trial, and

fixed the 17th day of April as the time for execution of the death penalty. These exceptions were abandoned, but on February 27, 1931, before adjournment of that term of court, the accused renewed his motion to set aside the verdict and grant him a new trial on the ground that J. E. Davis was not a qualified juror. The motion was docketed and continued until March 5th, on which day the accused appeared and filed certain affidavits in support of his motion and the Commonwealth filed counter affidavits. The court, on motion of the accused, granted a continuance until March 9th on the ground that the accused claimed he was surprised by the affidavits introduced by the Commonwealth and because Mr. H. M. Smith, Jr., who subsequent to the trial had been employed to assist in the defense, could not be present that day.

On the day fixed in the adjournment order, the case was again called and the court permitted both sides to introduce evidence *ore tenus*. In the bill of exceptions it is stated that the accused, by counsel, showed to the satisfaction of the court that the evidence in support of the motion had come to the knowledge of the accused and his counsel after the verdict and could not have been ascertained by them before the trial.

The first witness called by the accused was Walter Smith, who testified that he did not recollect making the statement which he had signed and sworn to on February 25th, before Raymond Sisson, in the manner and form therein set out. He stated that what actually did occur between him and the juror on the occasion referred to in his affidavit was that, at the time he and Davis first heard of the murder, soon after it happened, and without having heard the statement of any person who had actual knowledge of the facts, he, Smith, said that "he (Cox) ought to be electrocuted and he (Davis) agreed," and that he understood that Davis was agreeing with him from what Davis said on that oc-

casion, but that he, Smith, was doing most of the talking; that he did not mean to make a misstatement in his original affidavit and that he had been misunderstood at the time the original affidavit was made. The affidavit to which the witness referred is as follows:

"I, Walter Smith, * * * do hereby make this statement of my own free will and accord that I was at the store of Claude King, at Haynesville, Virginia, I do not remember what evening it was, but it was between December 19, 1930, the date of the murder, and January 28, 1931, the trial of Randolph Cox for the murder of J. N. Wood, and J. E. Davis, one of the jurors who tried Randolph Cox, while discussing the murder made this statement in my presence, to-wit: 'That if I am called to serve on the jury I will see that he (meaning Randolph Cox) is electrocuted.' "

After Smith had denied that the juror had made the statement he had attributed to him in the above affidavit, the accused called Raymond Sisson, a member of the General Assembly and a lawyer of good repute, who testified that he had written the affidavit in the language used by Walter Smith and read it over to him, and he had thereupon signed and sworn to it. The accused introduced two other witnesses, Lloyd and Charlie Smith, who testified that they were present when Walter Smith signed the above affidavit and it is a correct statement of what he said. Both of these witnesses stated that after signing the affidavit Walter Smith said that Davis told "a ........................ lie to get on the jury."

Walter Smith made another affidavit on the 28th day of February, as follows:

"I, Walter Smith, * * * of my own free will and accord, do make this statement:

"When I talked to Mr. Charlie Moss, attorney for Rannie Cox, on the 25th day of February, 1931, he must have misunderstood what I told him about what Mr. J. E. Davis

told me. I never heard Mr. J. E. Davis use the language quoted in the affidavit that has been read to me, and which I signed, which language is 'that if I am called to serve on the jury I will see that he (meaning Randolph Cox) is electrocuted.' The truth is that between the dates I named in my affidavit referred to above, Mr. Davis, myself and a number of others were discussing Cox murdering Mr. Wood, none of us had ever heard any statement from any of the witnesses who later testified in the *Cox Case* make any statement and we were only talking from what we had heard other people say and we had read in the papers, and Mr. Davis did make this statement in my presence at Claude King's store that if Cox had done what they say he had done he ought to be electrocuted. From what I heard of the case since if I had been on the jury I would have done exactly what the jury did."

The subject under investigation is the impartiality or prejudice of the juror, Davis, and his statements are received for the purpose of showing his state of mind. Walter Smith was called as a witness to throw light upon the subject under investigation, but when he states one thing in one affidavit and three days thereafter makes another statement, likewise under oath, which nullifies the effect of his first affidavit, and while on the stand makes a third statement which does not agree with either of his two prior statements, how can the court from such testimony arrive at any satisfactory conclusion as to Davis's state of mind? It is true that several witnesses testify that Walter Smith bears a good reputation for truth and veracity. Our trouble, regardless of his reputation, is to ascertain the truth from his own statements.

Counsel for the accused evidently realized this situation, for they introduced the three witnesses named above, the object and purpose of whose testimony was to contradict by proof of prior inconsistent statements their own witness.

This testimony can go no further than to prove that Walter Smith did make the first affidavit. It is not admissible to show what Davis said because the witnesses were not present when the conversation took place and therefore can know nothing of what passed between Davis and Smith.

In the petition, counsel for the accused suggests that pressure of some sort must have been used upon Smith to cause him to change his testimony. There is not a scintilla of proof in the record of any such thing. It is true that Smith and Claude King, another witness called by the accused, whose testimony is hereinafter referred to, repudiated the affidavits they had made. Both were examined and cross-examined at some length, but in such examinations no allusion was made to any influence which it is now suggested may have caused the witnesses to change their testimony. These witnesses state that they corrected their statements because one of them was misunderstood and a wrong interpretation had been placed upon the statement of the other. Whatever their reasons may have been for making the change their testimony falls far short of proving any bias on the part of J. E. Davis.

R. C. Mozingo testified substantially in accordance with his affidavit, which is as follows:

"* * * I was in Claude King's store, at Haynesville, Va., on December 19, 1930, and J. E. Davis, one of the jurors who tried Randolph Cox for the murder of J. E. Wood in Richmond county, Virginia, while discussing the murder of J. N. Wood, made this statement in my presence, to-wit: 'If I am called to serve on the jury I would give him the electric chair or I would shoot him on the stand if I have my way.'

"The day after the trial ended, at Claude King's store, at Haynesville, Virginia, I said: 'I don't think that Randolph Cox was given justice, by the evidence they didn't prove who shot first,' and J. E. Davis said: 'He got what was

coming to him,' and Claude King spoke up and said: 'All of the jurors must have lied when they got on the jury,' and J. E. Davis said: 'There wasn't a one of the jurors who hadn't passed their opinion, before the trial, of his guilt.' "

If the statements contained in the above affidavit are true, they show such bias as would disqualify the juror. Davis emphatically denies making any such statements and their general tenor is not in accord with the reputation proven by him. In addition, three witnesses, two of whom were summoned by the accused, testified as to the reputation of Mozingo for truth and veracity and two of them stated that they would not believe him on oath; when asked to give instances in which Mozingo had falsified, three were given, two of which occurred on the day of the hearing.

Luther King, another witness for the accused, repeated in substance the affidavit previously made by him in which he claims to have heard Davis say: "That if I am called to serve on the jury I will see that he (meaning Randolph Cox) is electrocuted on the spot if possible, if I am not called on the jury myself I could kill him on the ground if the jury that does try him fails to electrocute him."

Armstead Wellford, the Commonwealth's attorney, was called as a witnesss by the Commonwealth and stated that Luther King was a witness in another case sometime after he made the above affidavit, and after he testified in that case Wellford took him into the jury room and asked him what he had heard John Davis, the juror, say, and he stated that Davis said: 'If Cox had done what they said he had done he ought to be electrocuted." He denied to Wellford that he ever heard Davis make the other statements attributed to him in the affidavit.

Luther King, on cross-examination, did not deny that he told Wellford that what Davis did say was that "if it was like he understood that he should be electrocuted." He signs his affidavit by a cross mark, thereby indicating that

he is illiterate. Two witnesses were introduced by the Commonwealth to testify as to his reputation for truth and veracity and stated that it was bad and they would not believe him on oath; two witnesses called for the accused testified that his reputation was good.

We then have a reputable citizen, Armistead Wellford, stating that Luther King had given him an altogether different account of what he had heard Davis say; two witnesses, including Wellford, impeaching his veracity and an emphatic denial by Davis that he ever made any such statement as that attributed to him by Luther King.

Claude King, on the 25th of February, made an affidavit stating that after the trial and while J. E. Davis was in his store, he (King) said: "All of the jurors must lied when they set on the jury and tried Cox, and J. E. Davis said that there wasn't a man in Richmond county who hadn't formed their opinion. (Meaning forming their opinion before the trial of Randolph Cox's guilt.)"

On the 28th of February, Claude King made the following affidavit:

"I have just read the affidavit that I gave Mr. Charlie Moss, attorney for Randolph C. Cox, on the 25th day of February, 1931. This statement might be misleading, because what Mr. J. E. Davis told me was that he had formed an opinion from what he had heard; that Judge Smith asked him when he was called as a juror if he had formed an opinion that could not be changed and that his reply to judge was that my opinion can be changed either way according to what the witnesses testify to, and that his having formed an opinion from what he had heard before being called as juror would not affect his opinion in the case, and that he could render a verdict according to the evidence of the witnesses in the case without being governed by what he had heard about the case.

"I heard the evidence in the case myself and if I had been on the jury I would have convicted him of first degree murder."

Claude King was introduced by the accused as a witness before the court and repeated his statement made in the affidavit dated February 28th. Thereupon, the court asked the attorneys for the accused if it were not true that Davis, when examined on his *voir dire*, with fourteen others of the original venire, stated that he had not formed or expressed any opinion, and that no question whatever was raised during the trial as to the qualification of this juror. The three attorneys for the accused agreed that such were the facts, and further agreed that in the examination of another juror the court stated, or read, some of the rules by which the trial courts are guided in deciding whether or not the formation or expression of opinion disqualifies a juror. Thereupon, Claude King said that he did not know whether J. E. Davis, in his conversation with him the day after the trial, was talking about what the judge said to him or about him, and that he might have been talking about what the judge said about the opinion of another juror.

The two affidavits and the testimony of this witness are very confusing and leave us hopelessly at sea as to what took place between him and the juror.

In overruling the motion to set aside the verdict, the learned trial judge in a very carefully prepared opinion, among other things, said:

"Does it appear from the whole case, made before the court on the motion for a new trial, that the accused suffered injustice from the fact that Davis served upon the case as juror?

"To begin with, this court does not hesitate to say that if satisfied that the juror made the statement attributed to him by R. C. Mozingo and Luther King, as shown by their affidavits, this court would have, beyond doubt, granted

the accused a new trial. * * * But this court is by no means satisfied that this juror made any such statement.

"The decision of the above-mentioned pivotal question * * * was approached by this court in the light of the fact, as testified to by every witness, both for the accused and Commonwealth, who were interrogated in regard thereto, that the juror, Davis, bears an excellent reputation for truth and veracity and general good character amongst those who know him; and this juror, upon the stand (as well as in his affidavit), indignantly and vehemently denied that he ever made such a statement as attributed to him by Mozingo and Luther King, and he testified further that while he did not now recollect or recollect when examined on his *voir dire*, that he had ever stated that Cox should be electrocuted; that he would not go so far as to positively deny—in view of what Mr. Walter Smith had just testified to, to-wit: That when the news of the murder of Wood first reached Walter Smith and Davis, and before either had heard what any witness to the transaction would say, or what Cox claimed, that Walter Smith said Cox should be electrocuted, or that Walter Smith said if Cox has done all they say he has done, he should be electrocuted, and that witness (juror) agreed with him—that he might have, under those circumstances, simply agreed with Mr. Walter Smith; but if so that he did not recollect it, and that if he made such a statement at that time and under those circumstances, that such an idea or opinion did not influence him. In the counter affidavit of Davis he states that 'previous to the trial my sole information as to the murder of J. N. Wood by Randolph Cox was obtained from gossip around the country stores and from what I saw in the newspapers. None of this influenced me in the slightest in uniting in the verdict rendered by the other eleven jurors in the Cox trial. If I had any feeling whatever against Cox, I would have told the court so, and declined to serve as a juror.' "

It seems to us that the fair inference from the whole testimony and the opinion of the trial court is that it is probable that the juror, Davis, on hearing the report that Randolph Cox had murdered Officer Wood and had suffered hogs to devour his brains, either said, or agreed with Walter Smith when he said, in substance, that if the report were true Cox ought to be electrocuted. Such a statement would be the normal reaction of any good citizen to such a report. Davis states that at that time he did not know, and gave no thought to the possibility, that he might be called to serve on the jury, and at the time that he was examined on his *voir dire* he did not recall giving any expression as to any opinion as to the guilt or innocence of the accused.

If Davis had given expression to such a strong opinion as that claimed by both Luther King and R. C. Mozingo he could hardly have forgotten that he had formed such an opinion as the expressions would indicate. In his testimony he denies making any such statements and his reputation is in keeping with that denial. To believe that he made the statements these witnesses claim he made would result in believing that he concealed his opinion from the court in order to get on the jury. To believe this, we have to take the testimony of two witnesses, one of whom made a contradictory statement and both of whose reputations for truth and veracity were proven bad. The trial court was familiar with the circumstances, observed the witnesses on the stand, and stated that it was "by no means satisfied that this juror made any such a statement."

The degree of opinion which the court has held will not disqualify a juror has been frequently discussed.

In *Robinson's Case*, 104 Va. 888, at page 892, 52 S. E. 690, 691, Judge Keith quoted the syllabus in the *McCue Case*, 103 Va. 870, 49 S. E. 623, as follows:

"The trend of recent decisions is in the direction of limit-

ing rather than extending the disqualification of jurors by reason of mere opinion, hence the courts inquire into the character of that opinion. If it is a decided or substantial opinion as to the guilt or innocence of the accused, no matter upon what ground it was formed, the juror is incompetent, but if the opinion is merely hypothetical, and the court is satisfied from an examination of the juror on his *voir dire*, or otherwise, that he is not biased or prejudiced, and that he can give the prisoner a fair and impartial trial according to the law and the evidence, he should be accepted. No fixed and invariable rule can be laid down whereby to test the competency of jurors, but each case should be determined by its own facts and circumstances, and great weight should be attached by an appellate court to the opinion of the trial judge."

Judge Burks, in the case of *Rust* v. *Reid*, 124 Va. 1, 97 S. E. 324, 330, said: "* * * It is necessary, not only to inquire into the quality and degree of the opinion of the juror, but also to 'look into the sources of the information upon which his opinion rests.' A party may be able to remove impressions or opinions which are known to rest upon newspaper reports, or other hearsay evidence. Indeed, opinions based upon such foundation are rarely fixed and decided."

Judge Holt, in the recent case of *Ballard* v. *Commonwealth*, 156 Va. 980, 159 S. E. 222, at page 229, said:

"If intelligent jurors are to be secured, then there must be some relaxation of rules as to their competency. Most intelligent men and all educated men read newspapers, and they would have to be more than human if they did not form some opinion from accounts which they give of homicides like this, locally of intense interest to everybody. To reject them for this reason is to put a premium upon ignorance. What these men in substance say is that they have opinions based upon what they have read, but that

they can go into the jury box and give fair judgment on the case as it is unfolded during the progress of the trial. More than this could not be expected from honest men of good intelligence.''

In each of the above cases the court was discussing the opinion of the juror as given by him when questioned on his voir dire. In the case at bar we are dealing with the opinion of the juror expressed before he was summoned on the venire and not disclosed on his examination touching his qualification for jury service. If the statements proven to have been made by the juror are sufficiently strong to show a fixed opinion, or were made under such circumstances that they show he had prejudged the case, then he is not an impartial juror and the accused is entitled to a new trial. *Pitchford* v. *Commonwealth*, 135 Va. 654, 115 S. E. 707. If the statements proven are mere loose expressions based upon current reports of the commission of the crime, and there is no evidence, direct or circumstantial, that the juror intended to conceal from the court his real state of mind, then the juror is not disqualified. Such was the holding of this court in the following cases:

In the case of *Commonwealth* v. *Hughes*, 5 Rand. (26 Va.) 655, a juror on two different occasions before being called as a juror said: ''Damn his (meaning the prisoner) soul; if he took his knife and killed the man he ought to be hanged without judge or jury;'' and again: ''If he (the prisoner) did kill the man, he ought to be hanged.'' The accused was found guilty of second degree murder. The case was certified to the appellate court on the question whether or not a new trial should be granted because of the above statements of the juror not disclosed on his *voir dire*. The court said: ''The declaration of the juror was not the expression of an opinion relative to the guilt or innocence of the prisoner, but, from the words used by him, was a reply to some loose and general statement, of

the accuracy of which he had probably not reflected," and a new trial was denied.

A juror in the case of *Smith* v. *Commonwealth*, 2 Va. Cas. (4 Va.) 6, had said prior to being called as a juror: "Damn him, he ought to be hung." The verdict in that case was murder in the second degree. On a motion for a new trial on the ground of the prejudice of the juror, the court denied the motion and regarded the expression as one that any unprejudiced man might make hastily on hearing of the commission of a murder.

In *State* v. *Greer*, 22 W. Va. 800, 825, it is said: "If it appeared from the affidavits and other evidence, to the satisfaction of the court, that the expressions of opinion were such that the juror might readily have forgotten, then the court would regard it as a mere opinion, and not a prejudgment, and that, when the juror on his *voir dire* declared he had expressed no opinion as to the guilt or innocence of the accused, he did not swear falsely, but had forgotten that he had expressed such opinion; but if on the other hand it appeared that decided opinions had been expressed by him as to the guilt of the accused, so recently and so decidedly as to convince the court, that for the purpose of being a member of the jury he denied on oath that he had expressed any opinion as to the guilt of the accused, then it is clear that he had prejudged the case; and of course the prisoner was injured by his being on the jury."

In the case of *Kennedy* v. *Commonwealth*, 2 Va. Cas. (4 Va.) 510, on the charge of rape, the juror said, Kennedy, "was doomed for the penitentiary; that he would go to the penitentiary if he ever attempted to commit a rape." The court thought the opinion expressed by the juror was only an opinion as to what a jury might probably do in such a case, considering the nature of the offense and the aggrevated circumstances under which it had been perpetrated, and a new trial was denied.

■ A motion for a new trial after the verdict, on the ground of the disqualification of a juror, is addressed to the sound discretion of the trial judge, and where there is a conflict of testimony as to the language and conduct of the juror on which exception is founded, it is his duty to weigh and decide upon the credibility of the opposing statements of the witnesses and juror, and to determine whether in justice to the accused, and upon all the circumstances of the case, a new trial ought to be awarded.

■ The record before us shows that the trial judge gave the accused every opportunity to obtain his evidence and patiently heard the witnesses introduced before him to show the bias of the juror; that in delivering his opinion over-ruling the motion for a new trial he considered every claim made by the accused and held that the evidence offered by the accused was not reliable and that Davis had not pre-judged the case; that if on first hearing of the crime he had made any statement regarding the perpetrator, such statement was based on rumor and was not regarded by the juror as expressing a fixed opinion.

The late lamented Chief Justice Prentis, in the case of *Allen* v. *Commonwealth*, 122 Va. 834, 94 S. E. 783, at page 787, said:

■ . "The trial court has a discretion when such motions are presented, subject to review by this court, which will not be interfered with unless it appears that some injustice has been done."

The trial court has exercised this discretion by refusing to grant the accused a new trial. It does not appear that this discretion has been abused or that the accused has suffered any injustice because Davis was on the trial jury.

For the reasons stated the judgment is affirmed.

*Affirmed.*

Epes and Browning, JJ., dissenting.