# Richmond

## J. A. WINN V. COMMONWEALTH.

March 16, 1933.

·Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Malcolm K. Harris, Mapp & Mapp* and *George E. Allen,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Winn was convicted under an information in which he was charged with having made an unlawful assault upon Mrs. Everett Haley and his punishment was fixed at a fine of $50.00.

Winn contends that the trial court failed to secure for his trial a fair and impartial jury.

The Constitution of Virginia in Article 1, section 8, provides among other things that in criminal prosecutions, a person accused of crime is entitled "to a speedy trial by an impartial jury."

The information filed in this case under which the conviction was had, contained thirteen counts. Count number one was quashed prior to the trial. The accused was tried upon counts numbers two and three and found not guilty. He was then tried upon count number four and upon this trial he was found guilty and judgment was entered against him. It is in this judgment that he claims error was committed. Counts five to thirteen, both inclusive, were dismissed.

An examination of the information discloses that the accused was charged in counts one, two and three with having attempted to commit the crime of adultery with Bertha Mabes. In counts numbers four to thirteen, inclusive, he was charged with having made an assault upon Mrs. Everett Haley and various other women.

The general nature of the case at bar is disclosed by a portion of the testimony of Mrs. Haley, the prosecuting witness. She said that the accused came to her home and they went into the front room, and sat on the davenport; that he moved close to her, though she protested but he assured her that "there is no harm"; that she called his attention to the window shade which had not been pulled down; that he continued to "get closer" and that "he put one arm around me and put one hand down my waist." She also said that "he pushed me back—took both shoulders and pushed me back. His face was so red, it scared me. I tried to get away, and when I did, he took both my shoulders and pushed me up against the wall and held me so tight I couldn't move." Of course no attempt is made to review all of her testimony. Reference is made to only a part of it for the purpose of showing that the offense of which the accused was convicted was of the same general character or type as the offenses charged in the other counts in the information.

Wycliff Swain was summoned as a member of the panel to try the accused upon the thirteen counts in the information. On the day before the trial of the case at bar,

Swain stated in the presence of several other members of the panel that "he was glad he was not serving; that he thought he (the accused) was guilty as hell." He had heard the evidence in the case involving Bertha Mabes. When the case at bar was called Swain and one of those to whom Swain had made the statement, were selected to serve as jurors.

When Swain was examined upon the *voir dire,* he did not disclose to the court that he had formed and expressed the opinion that the accused was guilty. From his examination he appeared to be a qualified juror and was accepted.

A short time after the accused had been convicted and before the adjournment of court, his counsel learned that Swain had expressed the opinion that the accused was guilty before he had taken his seat as a juror and counsel promptly moved the court to set the verdict aside because Swain was not and could not have been a competent juror to try the case. The trial court by consent of the parties heard this new matter after having summoned Swain and the other members of the jury to appear in court and give testimony as to what, if any, opinion Swain had expressed. Several members of the jury testified that Swain had expressed the opinion, the day before the trial of the case at bar, that Winn was "guilty as hell." Swain admitted that he had expressed such an opinion but said that he intended to limit his opinion to the charges in counts one, two and three, of the information which involved the Mabes charges and that he did not mean to say that the accused was guilty in the present case under count number four. After admitting that he had expressed the opinion that the accused was guilty before he was selected as a juror, Swain gave the following explanation:

"I would like to say that my opinion or vote in the *Haley Case,* upon which I sat, was based entirely on the evidence which I heard in that case.

"The Court: In other words, yesterday when you were examined on your *voir dire* as to the *Haley Case*, you had no formed opinion as to the defendant's guilt or innocence in that case?

"A. No, sir, I knew nothing about it.

"The Court:

"Q. Did what you had heard on the street and at the proceedings in the police court charge your mind with any bias or prejudice, or consciously or unconsciously affect you in giving Mr. Winn a fair trial in the *Haley Case?*

"A. I had formed an opinion in the *Mabes Case,* and naturally I was biased in that particular instance. And when I was forced to sit on this case, I tried to wipe my mind clear of anything I had heard, and tried to give my mind entirely to this case, and I can truthfully say that that was the only thing that influenced me in the jury room.

"Q. And you don't think anything you heard gave you any unconscious bias in this case?

"A. No, sir.

"Q. Mr. Swain, I understood you to say that when you were forced to serve on the Haley jury, that you tried to wipe your mind of anything you heard about the *Mabes Case;* is that right?

"A. Yes, sir.

"Q. Your mind was strongly influenced by the *Mabes Case,* and you were thinking about it?

"A. When I first sat in the jury box; yes, sir.

"Q. That was what was in your mind when you were sitting there—first sitting in the jury box?

"A. I had stated that I had asked to be excused, and I wanted to be absolutely sure that I was going to give the case the attention that it should have, and let it make my decision right.

"Q. And you made an honest effort to wipe your mind of his guilt in the other case?

"A. Yes, sir."

After hearing this testimony and the testimony of the other jurors the trial court overruled the motion to set aside the verdict, thereby holding that Swain was a competent juror, notwithstanding the fact that he had admitted that he had a fixed opinion that the accused was guilty before he was selected as a juror to try the case at bar.

██ ██ Our conclusion is that Swain was not a fair and impartial juror and not competent to try the accused upon the fourth count of the information.

Counts one, two and three of the information contained charges against the accused of attempting to commit adultery with Bertha. Mabes and Swain said that his expression of guilt of the accused was intended to be limited to those charges, though it was not so limited. He stated that he did not intend to say that the accused was guilty of the charge contained in count four involving Mrs. Haley. It is entirely clear from the testimony touching this matter that Swain in expressing his opinion did not actually limit it to counts one, two and three, but that it applied to all of the thirteen counts in the information. But even if the opinion he expressed had been limited to the *Mabes Cases* in counts one, two and three, his testimony clearly shows that he was not a competent or qualified juror to sit in the case at bar, for he testified that his mind was strongly influenced by his belief that the accused was guilty in the *Mabes Cases* and that he was thinking about those cases when he sat as a juror in the instant case but that he made an effort to wipe from his mind the conclusion of the guilt of the accused in the *Mabes Cases*.

All of the thirteen counts in the information charged offenses of a similar nature. All of them were based on the same kind of immoral conduct indulged in with different women. It is inconceivable that Swain could have had a fixed opinion of the guilt of the accused in the

*Mabes Cases* and at the same time possess a mind unbiased, entirely neutral and impartial towards the accused, in the present case. But however this may be, as stated before, Swain did not limit his expression of the guilt of the accused to the *Mabes Cases*. Regardless of what he intended to say, he did say that he had a prior fixed opinion that Winn was guilty and his statement, in our opinion applied to all of the counts in the information. He could not have exercised in the present case an unbiased judgment, free of the influence of his fixed opinion of the guilt of the accused. Every mental inclination would have been against the accused and he could not have given him the fair and impartial trial to which he was entitled under the Constitution of Virginia. A juror who has taken his seat as such and who has to try hard to wipe his mind clear of a fixed opinion which he has previously expressed that an accused is guilty is not a competent juror.

Where a juror has prejudged the guilt of an accused, before hearing the sworn testimony, it cannot be said that the accused has had a fair and impartial trial. Jurors to be competent must stand indifferent, having no bias or prejudice for or against either the Commonwealth or the accused. Where a juror possesses a state of mind that discloses that it is leaning one way or the other and that he will not act in reference to the case with entire impartiality, he is biased. 16 C. J. p. 1154; 35 C. J. p. 327; 16 R. C. L. page 261; *Pitchford* v. *Com.*, 135 Va. 654, 115 S. E. 707.

It is unnecessary to consider the other assignment of error. The judgment of the trial court is reversed, the verdict of the jury set aside and the case is remanded for a new trial.

*Reversed.*